## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Jonathan Bijeol

    v.                                    Case No. 19-cv-749-JL

Manchester Police Department Officer
Victoria R. Catano, Chief of Police
Enoch Willard, Capt. Michael J. Begley,
Sgt. Richard W. Brennan, Sgt. Michael
Biron, and the City of Manchester

## REPORT AND RECOMMENDATION

Before the court is the complaint (Doc. No. 1) filed by
plaintiff, Jonathan Bijeol, an inmate at the New Hampshire State
Prison for Men.  The complaint is before the court for
preliminary review under LR 4.3(d)(1) and 28 U.S.C. § 1915A(a).

## Preliminary Review Standard

The court may dismiss claims asserted in an inmate's
complaint, if the court lacks subject matter jurisdiction, a
defendant is immune from the relief sought, the complaint fails
to state a claim, or the action is frivolous or malicious.  See
28 U.S.C. § 1915A(b).  In determining whether a pro se complaint
states a claim, the court must construe the complaint liberally.
See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To
determine whether to dismiss claims for failure to state a

claim, the court takes as true the factual content in the complaint and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether plaintiff has stated a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## **Background**

In the morning of July 21, 2016, a cab driver taking Mr. Bijeol to work in Manchester, New Hampshire, saw him nodding off in the back seat.  When Mr. Bijeol appeared to slump over, the driver stopped, called 911, and began CPR.  An ambulance arrived, and emergency medical technicians ("EMTs") took charge. Mr. Bijeol, who had stopped breathing, was treated for an apparent heroin overdose.

Manchester Police Department ("MPD") Officer Victoria Catano responded to a dispatch call at 10:04 a.m., requesting that she assist the EMTs working to save Mr. Bijeol.  Mr. Bijeol alleges that after he was revived, he sat up and tried to walk away.  He further alleges that the first responders did not tell him what was happening or explain to him what they were doing in a way he could understand.  A medical record attached to the complaint states that Mr. Bijeol tried to leave the ambulance.

See Doc. No. 1-8.  Mr. Bijeol alleges that one of the EMTs put him in a chokehold, while the other used her knees to compress him to the gurney.  Mr. Bijeol alleges that while the EMTs were forcing him down, Officer Catano seized his right wrist, pulled it behind him and across his back, and handcuffed his wrist to the opposite side of the ambulance gurney, causing his body weight to rest upon his wrist when the EMTs put straps across his chest, waist, knees and ankles to secure him to the gurney.

Mr. Bijeol alleges he complained about the pain and compression, that he was compliant at all times, and that he asked the officer to remove or reposition the handcuffs to release the pressure on his right arm.  Officer Catano refused that request, saying, Mr. Bijeol alleges, that if he stopped crying out, the cuffs would be loosened upon his arrival at the hospital.  Mr. Bijeol further alleges that Officer Catano told him as she left the ambulance that after he was released from the hospital, he was going to be booked for drug possession. Compl. (Doc. No. 1) at 5.

While Mr. Bijeol was in the ambulance with the EMTs on his way to the hospital, Officer Catano received a dispatch call stating that Mr. Bijeol was under a parole officer's supervision.  Officer Catano contacted that parole officer and told him about the overdose and that Mr. Bijeol was in custody.

The parole officer said he would be placing a 72-hour hold on
Mr. Bijeol, which would allow time to determine whether to
initiate parole violation proceedings against him.

Mr. Bijeol arrived at the Elliot Hospital Emergency
Department, approximately an hour after he had been handcuffed
to the gurney, about thirty minutes before Officer Catano.  Upon
Officer Catano's arrival, the hospital staff asked her to remove
Mr. Bijeol's handcuffs.  She did so, switching the cuffs from
Mr. Bijeol's right wrist to his left, in a manner that allowed
the medical staff to begin monitoring his condition.  Mr. Bijeol
was discharged from the Elliot Hospital at 1:42 p.m.  MPD
officers then transported him to the Manchester Police Station
for booking.

Officer Catano prepared an affidavit on that day recounting
her investigation and warrantless arrest of Mr. Bijeol.  In the
affidavit Officer Catano states that she arrested Mr. Bijeol
because she had information that he had possessed a controlled
drug, in violation of N.H. Rev. Stat. Ann. ("RSA") § 318-B:2,
and because he was subject to a 72-hour hold requested by Mr.
Bijeol's parole officer.  The affidavit generally describes her
observations of what was happening when she arrived at the
scene, the information and evidence she obtained from the EMTs,
her interview with the cab driver who called 911, and her

4

conversation with Mr. Bijeol's parole officer, which preceded
Mr. Bijeol's discharge from the hospital and booking.  The
affidavit states that the physical evidence from the scene --
recovered when the EMTs had to cut Mr. Bijeol's shorts to treat
him – included  a small vial, a hypodermic needle, and a clear
cylinder with a hard-packed white substance which tested
presumptively positive for heroin.  See Doc. No. 1-3, at 1.  The
affidavit was witnessed by a justice of the peace ("JP"), MPD
Sgt. Richard Brennan.  A handwritten notation stating "P.C.
found" appears on the affidavit attached to the Complaint, along
with illegible initials and a date of July 22, 2016.

Sometime after witnessing Officer Catano sign her
affidavit, Sgt. Brennan signed a criminal complaint, on behalf
of "complainant" MPD Chief of Police Enoch Willard, initiating
Mr. Bijeol's criminal prosecution for drug possession.  See Doc.
No. 1-4.  The officer's signature swearing to the truth of the
matters asserted was witnessed by a JP on July 22, 2016.  That
criminal complaint charges Mr. Bijeol with a Class B felony for
knowingly having heroin in his possession in violation of RSA
§ 318-B:2, "without authorization by any exceptions of NH RSA
318-B." Id.

After his booking, officers transported Mr. Bijeol to the
Hillsborough County House of Corrections ("HCHC") to await his

arraignment the next morning.  Compl. (Doc. No. 1) at 6.  On
July 22, 2016, the court in State v. Bijeol, No. 456-2016-cr-
03825(1253089C) (N.H. Cir. Ct., 9th Cir.-Dist. Div.-Manchester),
ordered Mr. Bijeol detained in lieu of bail and scheduled an
August 2, 2016 probable cause hearing.  Mr. Bijeol remained at
the HCHC for ten days until his release on August 1, 2016, when
the drug possession charges were nol prossed for reasons not
stated in this court's record.  The complaint does not indicate
whether parole violation proceedings were initiated.

Mr. Bijeol has attached the text of certain state laws as
exhibits to his complaint, including RSA § 592-A:7, I; RSA
§ 455-A:3; and RSA § 318-B:28-b, III.  RSA § 592-A:7, I,
authorizes police officers to sign criminal complaints to
initiate proceedings in circuit courts in New Hampshire.  RSA
§ 455-A:3 requires JPs, when notarizing documents, to state the
expiration date of their commission, although that statute
further notes that the "juridical act" is not invalidated by the
JP's failure to do so.  Mr. Bijeol's criminal complaint does not
state the expiration date of the JP's commission.  See Doc. No.
1-4.

RSA § 318-B:28-b, III, provides as follows:

It shall be a defense to an offense of possessing or having
under his or her control, a controlled drug in violation of
RSA 318-B:2 that a person who is experiencing a drug

6

overdose, in good faith and in a timely manner, requests
medical assistance for himself or herself.  A person who in
good faith requests, or is the subject of a good faith
request for medical assistance, shall not be arrested,
prosecuted, or convicted for possessing, or having under
his or her control, a controlled drug in violation of RSA
318-B:2, if the evidence for the charge was gained as a
proximate result of the request for medical assistance.

Id.  That statute protects a person who is having an overdose

from being arrested, prosecuted, or convicted of the state law

crimes of drug possession or of having drugs under his or her

control, depending on how the evidence for the charge was

acquired.  See id.; see also State v. Eldridge, No. 2018-0551,

2020 N.H. LEXIS 18, at *8-*9, 2020 WL 812924, at *3-*4 (N.H.

Feb. 19, 2020).  Neither Officer Catano's affidavit, nor the

criminal complaint, makes any reference to RSA § 318-B:28-b,

III.


## **Claims**

The court has identified and renumbered the claims asserted

by Mr. Bijeol as follows:

1.   MPD Officer Victoria Catano violated Mr. Bijeol's
Fourth Amendment right not to be subjected to an
unreasonable arrest involving excessive force, rendering
her liable under 42 U.S.C. § 1983, in that:

a.   Officer Catano handcuffed Mr. Bijeol behind his
back, as the EMTs were strapping him face-up to an
ambulance gurney, and then failed to release or
reposition his handcuffs when he said that they were

causing him pain although he was compliant with the officer's directions; and

b.    Officer Catano allowed Mr. Bijeol to remain in handcuffs for several hours after repositioning them, until he was booked at the Manchester Police Station.

2.    In that MPD Officer Catano made a warrantless arrest of Mr. Bijeol and then signed an affidavit that formed the basis of a criminal complaint, signed by MPD Sgt. Richard Brennan on behalf of MPD Chief Enoch Willard, charging Mr. Bijeol with drug possession:

a.    Defendants violated Mr. Bijeol's Fourth Amendment right not to be subjected to a warrantless arrest except upon probable cause,

i.    Rendering Officer Catano liable under 42 U.S.C. § 1983 for arresting Mr. Bijeol for drug possession before she determined he was a parolee;

ii.   Rendering Officer Catano liable under 42 U.S.C. § 1983 for causing him to remain in custody after she learned he was a parolee; and

iii.  Rendering Sgt. Brennan liable under 42 U.S.C. § 1983 for causing him to remain in custody prior to his initial appearance.

b.    Defendants violated Mr. Bijeol's Fourth Amendment right not to be subjected to court-ordered pretrial detention except upon a valid probable cause finding,

i.    Based on Officer Catano's affidavit, rendering her liable under 42 U.S.C. § 1983; and

ii.   Based on the criminal complaint, rendering Sgt. Brennan and Chief Willard liable under 42 U.S.C. § 1983.

c.    Defendants are liable, under 42 U.S.C. § 1983, for violations of Mr. Bijeol's Fourteenth Amendment right to due process, by causing Mr. Bijeol to be subject to prosecution and pretrial detention, despite

the immunity afforded by RSA § 318-B:28-b, III and the irregularities in the signatures on the criminal complaint; and

d.    Defendants are liable, under 42 U.S.C. § 1983, for violations of Mr. Bijeol's Fourteenth Amendment right to equal protection by selectively arresting and charging Mr. Bijeol with drug possession, despite the immunity available under RSA § 318-B:28-b, III.

3.    The City of Manchester ("City") and MPD Chief Willard are liable under 42 U.S.C. § 1983, for violations of plaintiff's federal constitutional rights, in that:

a.    The (i) City and (ii) Chief Willard allowed for the implementation of a custom of unsupervised entry of criminal complaints signed by subordinate officers including Sgt. Brennan on behalf of Chief Willard; and

b.    The City and Chief Willard failed to supervise or train subordinate officers in implementing state laws:

i.    Concerning arrests and prosecutions for drug crimes under RSA § 318-B:2 and the immunity available in relation to a drug overdose under § 318-B:28-b; and

ii.    Concerning the proper procedures for signing and filing criminal complaints, and notarizing the signatures on those documents.

4.    Defendants are liable, under 42 U.S.C. §§ 1983 and 1985, for a conspiracy to violate Mr. Bijeol's federal rights, in that:

a.    MPD Officer Catano and MPD Sgt. Brennan conspired to violate Mr. Bijeol's rights in the manner summarized in Claims 2(a)-(d).

b.    The City and Chief Willard conspired to violate Mr. Bijeol's rights as summarized in Claims 3(a)-(b).

5.    Defendants are liable under state law, in that:

a.   The conduct summarized in Claims 2(a)-(d) violated Mr. Bijeol's state constitutional rights;

b.   The conduct summarized in Claims 2(a)-(d) violated RSA §§ 318-B:28-b, III (overdose immunity), 456-B:3, III (authorizing JPs to notarize documents), 455-A:3 (same), and 592-A:7, I (authorizing police officers to initiate circuit court criminal proceedings by criminal complaints); and

c.   The conduct summarized in Claims 2(a)-(d) amounted to the common law torts of:

    i.   false arrest/detention (A) relating to Officer Catano's arrest of Mr. Bijeol before she learned he was a parolee, and (B) relating to defendants' conduct in keeping Mr. Bijeol in custody until his initial appearance;

    ii.   tortious "violation of statute," and/or negligence per se, based on defendants' failure to conform their conduct to RSA § 318-B:28-b, III; RSA § 456-B:3, III; RSA § 455-A:3; and RSA § 592-A:7, I;

    iii. malicious prosecution;

    iv.   intentional infliction of emotional distress; and

    v.   deceit.

6.   MPD Capt. Michael Begley, Sgt. Michael Biron, Chief Willard, Sgt. Brennan, and the City of Manchester are liable under state law for the tortious conduct of the subordinate officers named as defendants:

a.   Based on the supervisory officers' failure to train or supervise their subordinates concerning arrests and prosecutions for drug crimes under RSA § 318-B:2 and the immunity under § 318-B:28-b; and

b.   Based on the supervisory officers' failure to train or supervise their subordinates concerning the

proper procedures for signing and filing criminal
complaints and notarizing the signatures on documents.

c.   Based on the City's vicarious liability for the
tortious conduct of its employees undertaken within
the scope of their employment.

## Discussion

I.   Fourth Amendment Handcuffing Claims (Claims 1(a) and 1(b))

A.   Elements of Fourth Amendment Excessive Force Claims

In order to prevail on a Fourth Amendment excessive force

claim arising from handcuffing incident to an arrest,

a plaintiff must establish that the defendant's
actions in handcuffing her were objectively
unreasonable in light of the circumstances and the
facts known to the officer at the time.  This showing
must take into account the reasonableness of the
officer's actions, viewed from the perspective of a
prototypical officer confronted with the same or
similar circumstances.  All of the attendant facts
must be considered.

Calvi v. Knox Cty., 470 F.3d 422, 428 (1st Cir. 2006) (citations

omitted).

[T]he "reasonableness" inquiry in an excessive force
case is an objective one: the question is whether the
officers' actions are "objectively reasonable" in
light of the facts and circumstances confronting them,
without regard to their underlying intent or
motivation. . . .

Graham v. Connor, 490 U.S. 386, 397 (1989) (internal citations

omitted).  Factors that courts have considered pertinent to

examining Fourth Amendment excessive force claims involving

handcuffing include: "'1) [whether] the handcuffs were
unreasonably tight; 2) [whether] the defendants ignored the
arrestee's pleas that the handcuffs were too tight; and 3) the
degree of injury to the wrists.'" Usavage v. Port Auth. of N.Y.
& N.J., 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (citation
omitted).

B.   Claim 1(a)

In Claim 1(a), Mr. Bijeol claims that Officer Catano
violated his Fourth Amendment rights when she used force in
handcuffing his right wrist behind his back to the opposite side
of the ambulance gurney and then left him that way after the
EMTs strapped him down, causing his weight to compress his wrist
and arm behind him.  Although there are allegations in the
Complaint that may not support a Fourth Amendment excessive
force claim, cf. Fitzgerald v. Santoro, 707 F.3d 725, 735 (7th
Cir. 2013) (use of wrist lock by officer accompanying individual
handcuffed to ambulance gurney was not objectively unreasonable,
considering she was surrounded by potentially hazardous medical
equipment and had previously attempted to flee), the complaint
nonetheless states a plausible Fourth Amendment excessive force
claim.  Accordingly, in the Order issued this date, the court

has directed MPD Officer Catano, in her individual capacity, to answer the Complaint with respect to Claim 1(a).

### C.   Claim 1(b))

Claim 1(b) concerns Officer Catano's conduct in allowing Mr. Bijeol to remain in handcuffs, after she repositioned them in the Emergency Department, throughout his several hour stay and discharge from the hospital, until he was booked at the Manchester Police Station.  A reasonable officer in Officer Catano's position, assessing the need for handcuffs, would have known that Mr. Bijeol had recently overdosed on opiates, that he had tried to leave the ambulance in a manner that caused both of the EMTs to apply substantial force to subdue him, that he remained in close proximity to potentially hazardous items at the hospital, and that he was a parolee facing the possibility of revocation proceedings and detention.  As there are no allegations suggesting that Mr. Bijeol complained about the handcuffs being painful after they were repositioned, no allegations that he suffered any physical injuries from the handcuffs, and no allegations that the duration of his handcuffing was inconsistent with standard operating procedures involving arrestees who receive emergency care, Officer Catano's conduct in leaving Mr. Bijeol handcuffed for several hours,

13

under the circumstances, does not state a Fourth Amendment claim
of excessive force upon which relief can be granted.  Cf. Calvi,
470 F.3d at 428 (where standard practice called for handcuffing
arrestees, officer's decision to keep arrestee handcuffed as
long as necessary to transport arrestee to lockup was
reasonable).  Accordingly, the district judge should dismiss
Claim 1(b).


II.  Fourth Amendment False Arrest Claims (Claims 2(a)(i)-(ii))

    A.   Probable Cause and False Arrest Elements

    The Fourth Amendment protects "[t]he right of the people to
be secure in their persons . . . against unreasonable searches
and seizures" and provides that "no Warrants shall issue, but
upon probable cause . . . ."  U.S. Const. amend. IV.  "Probable
cause is an absolute bar to a claim of false arrest asserted
under the Fourth Amendment and section 1983."  Dollard v.
Whisenand, 946 F.3d 342, 353 (7th Cir. 2019); see also Holder v.
Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (warrantless
arrests are generally lawful if police officer had probable
cause).

> A police officer has probable cause when, at the time
> of the arrest, the "facts and circumstances within the
> officer's knowledge . . . are sufficient to warrant a
> prudent person, or one of reasonable caution, in
> believing, in the circumstances shown, that the

suspect has committed, is committing, or is about to
commit an offense."

Holder, 585 F.3d at 504.  "In determining whether the officer

had probable cause, [the court] must view the circumstances from

the perspective of a reasonable person in the position of the

officer. . . ."  Id. (citations omitted).


   B.   Officer Catano and Drug Possession (Claim 2(a)(i)))

     Claim 2(a) asserts violations of Mr. Bijeol's Fourth

Amendment rights, arising from his arrest in circumstances he

contends could not support his arrest or prosecution for drug

possession under state law.  Officer Catano is alleged to have

told Mr. Bijeol, when she left him in the ambulance, that she

would be arresting him for heroin possession after his discharge

from the hospital.  Officer Catano's affidavit and the criminal

complaint initiating Mr. Bijeol's prosecution both cite RSA

§ 318-B-2, which generally criminalizes the unauthorized

possession of heroin.

     Mr. Bijeol does not deny that he was in possession of

heroin at the time of his arrest, and he does not allege facts

suggesting that his use and possession of that drug was

authorized by law.  Rather, citing RSA § 318-B:28-b, III, he

claims he was immune from arrest and prosecution for drug

possession because the evidence supporting his arrest and prosecution were recovered by the EMTs resuscitating him.  In pertinent part, RSA § 318-B:28-b, III, provides as follows:

> A person who . . . is the subject of a good faith request for medical assistance, shall not be arrested, prosecuted, or convicted for possessing . . . a controlled drug in violation of RSA 318-B:2, if the evidence for the charge was gained as a proximate result of the request for medical assistance.

Id. § 318-B:28-b, III.  The scope of the protection from arrests and prosecutions available under that statute is cabined by a related provision, RSA § 318-B:28-b, IV(c), which preserves the authority of police officers to place a person in custody as part of an investigation, or to make arrests for other offenses. Paragraph IV(c) provides, in pertinent part, as follows:

> Nothing in this section shall be construed to limit or abridge the authority of a law enforcement officer to detain or place into custody a person as part of a criminal investigation, or to arrest a person for an offense not protected by the provisions of . . . [paragraph III].

RSA § 318-B:28-b, IV(c).

The immunity afforded to a person experiencing an overdose is analogous to an affirmative defense to a charge of drug possession, on which Mr. Bijeol would have borne the burden of proof at trial.[1]  In general, arresting officers do not have a

---

[1]Whether the immunity from "arrests" offered by New Hampshire law extends more protection to overdose victims and their associates than a state-created affirmative defense would

duty to investigate to determine if there could be a viable defense to prosecution under state law, once it appears that there is probable cause for an arrest, see Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004).

This court cannot conclude in light of the facts pleaded in the Complaint that a reasonable officer in Officer Catano's position would not have understood that Mr. Bijeol's arrest under the circumstances was unlawful, given the apparent applicability of Paragraph III of the overdose immunity statute. The Complaint thus states an actionable Fourth Amendment false arrest claim (Claim 2(a)(i)) relating to facts known to Officer Catano at the time she placed Mr. Bijeol under arrest for drug possession, before she learned he was a parolee.  In the Order issued this date, the court has directed service of the

_____

offer, as some commentators have argued, is an issue this court need not resolve in its preliminary review of the Fourth Amendment claims in this case.  See Nicole Schill, "The Fatal Shortcomings of Our Good Samaritan Overdose Statutes and Proposed Model Statute," 25 Cardozo J. Equal Rts. & Soc. Just. 123 (2018).  In Virginia v. Moore, the Supreme Court observed that when State law forbids officers from arresting individuals for certain criminal conduct, the law may manifest that the State "values its interests in forgoing arrests more highly than its interests in making them," but the State's enactment of a restrictive arrest policy does not engraft that policy choice onto the Fourth Amendment's probable cause requirement.  553 U.S. 164, 174 (2008).

complaint upon Officer Catano, in her individual capacity, with respect to Claim 2(a)(i).

### C.   Officer Catano and Parole Violation (Claim 2(a)(ii))

Claim 2(a)(ii) raises the issue of whether there was probable cause to retain Mr. Bijeol in detention after Officer Catano learned that Mr. Bijeol was a parolee subject to conditions of supervised release.  Officer Catano prepared an affidavit on July 21, 2016, which cites both RSA § 318-B-2 and the parole officer's 72-hour hold as grounds for his warrantless arrest.  Probable cause regarding a parole violation may provide sufficient grounds for a constitutional warrantless arrest by a police officer who is not also a parole officer.  United States v. Bernacet, 724 F.3d 269, 279 (2d Cir. 2013).  A standard condition of supervised release in New Hampshire is to avoid criminal conduct, see State v. Budgett, 146 N.H. 135, 138, 769 A.2d 351, 353 (2001).  Officer Catano's affidavit states she learned that Mr. Bijeol was a parolee after he was on his way to the hospital.  The evidence uncovered by Officer Catano's investigation at that point indicated that he had used or possessed heroin while on parole, and that his parole officer intended to place a 72-hour hold on him because of his conduct on July 21, 2016.  In that there is no express provision in RSA

§ 318-B:28-b, III, immunizing parolees who overdose from arrests

or prosecutions for parole violations based on evidence

recovered from the scene of an overdose, the facts known to

Officer Catano at the time she learned that Mr. Bijeol would be

subject to a 72-hour hold amounted to probable cause to detain

him on suspicion of a parole violation, and thus her warrantless

arrest on that basis did not violate his Fourth Amendment

rights.  Accordingly, the district judge should dismiss Claim

2(a)(ii).


      D.   <u>Sgt. Brennan and False Arrest (Claim 2(a)(iii))</u>

    Mr. Bijeol seeks to join Sgt. Brennan as a co-defendant to

his Fourth Amendment false arrest claims.  Sgt. Brennan's

involvement, however, is alleged to have occurred after Officer

Catano had already taken Mr. Bijeol to the Manchester Police

Station for booking.  There are no allegations suggesting that

Sgt. Brennan had any direct involvement in Officer Bijeol's

decision to arrest Mr. Bijeol before she determined he was a

parolee.

    Furthermore, to the extent Mr. Bijeol intends to name Sgt.

Brennan as a defendant to his Fourth Amendment claim challenging

his detention after Sgt. Brennan witnessed Officer Catano's

signing of the affidavit, nothing in the record indicates that

Sgt. Brennan, when he witnessed the oath, had any reason to believe that Officer Catano was making a false statement, or that Sgt. Brennan engaged in any conduct causing Mr. Bijeol to be improperly detained.  Accordingly, the district judge should dismiss Claim 2(a)(iii).

III. <u>Fourth Amendment Malicious Prosecution (Claim 2(b))</u>

Claim 2(b) summarizes Mr. Bijeol's claim that the defendant officers violated his Fourth Amendment right to avoid pretrial detention unsupported by probable cause, with respect to his court-ordered detention at the HCHC from July 22, 2016 through August 1, 2016.  Mr. Bijeol hinges his Fourth Amendment malicious prosecution/pretrial detention claim on the affidavit signed by Officer Catano, and on the criminal complaint, charging him with drug possession.

A.    <u>Fourth Amendment Malicious Prosecution Elements</u>

To state a claim of a Fourth Amendment violation relating to pretrial detention that is authorized by a court order, unsupported by probable cause, the plaintiff must allege facts, which, if taken as true, establish: "'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings

terminated in plaintiff's favor.'" <u>Hernandez-Cuevas</u>, 723 F.3d
at 101 (citation omitted).  A decision to nol pros a case may or
may not satisfy the favorable termination requirement, depending
on the facts of a particular case.  <u>Cf.</u> <u>Robinson v. Fimbel Door
Co.</u>, 113 N.H. 348, 350-51, 306 A.2d 768, 770 (1973) (regarding
analogous state law tort of malicious prosecution).


    B.   <u>Officer Catano's Affidavit (Claim 2(b)(i))</u>

Liberally construed, the complaint alleges facts suggesting
that at the time of Mr. Bijeol's initial appearance, the court
had before it Officer Catano's affidavit.  Mr. Bijeol highlights
no false statements of fact in, or omissions of material facts
from, Officer Catano's affidavit, which could have affected the
state court's ruling.  And there are no other facts alleged in
the Complaint suggesting that Officer Catano made any other
false or misleading statements regarding her arrest of Mr.
Bijeol that were before the court when it ordered Mr. Bijeol
detained in lieu of bail.

Even if the information in the affidavit concerning the
events of July 21, 2016 were insufficient to provide probable
cause to detain Mr. Bijeol, the affidavit included the fact that
Mr. Bijeol was arrested pursuant to a 72-hour hold requested by
his parole officer.  Therefore, the court's finding that there

was probable cause to detain Mr. Bijeol pursuant to Officer

Catano's affidavit did not Mr. Bijeol's Fourth Amendment rights.

Accordingly, the district judge should dismiss Claim 2(b)(i) to

the extent it is asserted against Officer Catano.

### C.   Criminal Complaint (Claim 2(b)(ii))

Mr. Bijeol asserts a similar Fourth Amendment malicious

prosecution/false imprisonment claim against Chief Willard

and/or Sgt. Brennan, for their conduct in preparing, signing,

and filing the criminal complaint that charged Mr. Bijeol with

knowingly possessing heroin, without any authorization to do so.

Chief Willard and/or Sgt. Brennan, in preparing and filing that

criminal complaint, implemented the officers' authority under

state law to initiate a criminal prosecution in the state

circuit court.  Absent from the statement of facts supporting

the charges is any clarification of why the overdose immunity

statute did not apply in Mr. Bijeol's circumstances.

The court concludes that the Fourth Amendment malicious

prosecution claim asserted against those officers is sufficient

to survive preliminary review.  Without prejudice to their

ability to move to dismiss that claim on any proper basis, see,

e.g., Barber v. Miller, 809 F.3d 840, 844 (6th Cir. 2015)

("social worker [who] acts as a legal advocate when initiating

court proceedings" and "filing child-abuse complaints," is
shielded from claims for damages, "even under allegations that
the social worker intentionally misrepresented facts to the
family court"), the court directs service of that claim (Claim
2(b)(ii)), against defendants Chief Willard and Sgt. Brennan, in
the Order issued this date.


IV.   Fourteenth Amendment Due Process Claim (Claim 2(c))

     Mr. Bijeol alleges that his arrest and pretrial detention
violated his Fourteenth Amendment due process rights.  Mr.
Bijeol appears to seek relief for what he considers to be the
defendants' failure to conform their conduct to the requirements
of state law.  For example, he points to the defendants'
decision to arrest and detain him, notwithstanding the state's
overdose immunity law.  And with respect to the criminal
complaint, he points out that Sgt. Brennan, in signing on behalf
of Chief Willard, the nominal complainant, swears to the truth
of the matters in the complaint on the complainant's behalf.
Mr. Bijeol further asserts that the JP who signed the complaint,
attesting that the "complainant" personally appeared and made an
oath that the complaint is true in the complainant's belief, did
not include with his or her signature the date of expiration of
the JP's commission.

23

To plead a viable claim of a violation of the right to procedural due process, a plaintiff must allege facts showing that a state actor has deprived him or her of a fundamental right or a protected liberty or property interest.  To the extent Mr. Bijeol seeks relief on Claim 2(c) based on the above-noted irregularities in the signing, notarizing, and filing of the criminal complaint, he has failed to show that those actions deprived him of any protected liberty interest, independent of his Fourth Amendment right not to be seized without a warrant except upon a showing of probable cause.  To the extent Mr. Bijeol's due process claims summarized in Claim 2(c) are based on his arrest and detention without probable cause, the Fourth Amendment, and not the Fourteenth Amendment, provides the proper foundation for those claims.  See generally Hernandez-Cuevas, 723 F.3d at 98.  To the extent Mr. Bijeol seeks relief for a violation of his right to substantive due process arising from defendants' conduct, he has failed to plead facts showing that the defendants' non-conformity with the requirements of state law objectively shocks the conscience, or that the defendants' actions amounted to more than "humdrum legal error" or "bad faith."  S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 91, 93 (1st Cir. 2014) (citation omitted).  Accordingly, the district judge should dismiss Claim 2(c).

V.    Fourteenth Amendment Equal Protection Claim (Claim 2(d))

In Claim 2(d), Mr. Bijeol asserts a selective prosecution claim, asserting that his arrest and prosecution violated his equal protection rights under the Fourteenth Amendment, as he was not afforded the protections generally available in like circumstances under RSA § 318-B:28-b, III.  "The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'"  United States v. Armstrong, 517 U.S. 456, 465 (1996) (citation omitted).

The Fourteenth Amendment's Equal Protection Clause dictates "that 'similarly situated persons are to receive substantially similar treatment from their government.'"  Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (citation omitted).  To assert an equal protection claim, a plaintiff must state facts to show that, as compared to others similarly situated, he was treated differently based on an improper consideration.  See id. at 78.

Mr. Bijeol points to no facts suggesting any racial discrimination or suspect class-based bias, as grounds for his arrest and prosecution.  Rather, he asserts in a conclusory manner that the defendants targeted him for arrest and prosecution because he was an overdose victim who needed medical treatment.  He pleads no facts, however, suggesting that

25

otherwise similarly-situated individuals who are not overdose
victims needing medical treatment have been treated differently;
the existence of the statute does not show that the defendant
officers implement that statute differently, based on whether
the arrestee is an overdose victim or a similarly-situated
bystander to an overdose also found to be in possession of
drugs.  Mr. Bijeol has failed to show that such bystanders who
are parolees and/or who have attempted to get away from first
responders at the scene have also been treated more favorably by
these defendants.  In the absence of any allegations showing
that any similarly-situated individuals have been treated
differently without a rational basis for the difference, the
allegations of selective prosecution in this case are
speculative and conclusory.  Accordingly, the district judge
should dismiss Claim 2(d).


VI.  § 1983 Supervisory/Municipal Liability (Claims 3(a)-(b))

Claims 3(a) and 3(b) seek to join certain supervisory
officers and the City of Manchester as defendants, based on
their alleged failure to train or supervise the officers who are
alleged to have violated Mr. Bijeol's rights.  In addition, Mr.
Bijeol asserts claims of supervisory and municipal liability
based on the MPD custom of allowing subordinate officers to sign

criminal complaints on behalf of MPD Police Chief Willard.

A.    Claim 3(a)

1.    Liability for Custom/Policy under *Monell*

"[W]hen execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," then "the government as an entity" may be held responsible under § 1983.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  The complaint lacks non-conclusory allegations that could show that the custom of allowing subordinate officers to sign criminal complaints on Chief Willard's behalf has caused any of the alleged Fourth Amendment uses of excessive force or false arrests that have been allowed to proceed in this case.  Without a sufficient showing of causation, the alleged custom does not form the basis for a Monell claim in this case.  Accordingly, Claim 3(a)(i) should be dismissed, to the extent liability is claimed under Monell.

2.    § 1983 Supervisory Liability

A theory of liability arising from a supervisor's alleged deliberate indifference can provide a separate ground for finding a supervisor liable for the unconstitutional acts of his

27

or her subordinates.  <u>Parker v. Landry</u>, 935 F.3d 9, 14-15 (1st
Cir. 2019).

> Facts showing no more than a supervisor's mere
> negligence vis-à-vis his subordinate's misconduct are
> not enough to make out a claim of supervisory
> liability.  At a minimum, the plaintiff must allege
> facts showing that the supervisor's conduct sank to
> the level of deliberate indifference.

<u>Id.</u> at 15 (citations omitted).

"A showing of [supervisory] deliberate indifference has
three components: "the plaintiff must show '(1) that the
officials had knowledge of facts, from which (2) the official[s]
can draw the inference (3) that a substantial risk of serious
harm exists.'"  <u>Id.</u> (citation omitted).  "And even if the
complaint contains facts plausibly showing deliberate
indifference, the plaintiff must also allege facts giving rise
to a causal nexus between the supervisor's acts or omissions and
the subordinate's misconduct."  <u>Id.</u> at 16.  A plaintiff may
state a claim of supervisory liability under 42 U.S.C. § 1983
upon allegations showing that there was an "affirmative link"
between the supervisory defendant's deliberate indifference and
the unconstitutional acts or omissions of his or her
subordinates, which "led inexorably to the constitutional
violation."  <u>Morales v. Chadbourne</u>, 793 F.3d 208, 221 (1st Cir.
2015).

Mr. Bijeol points to Chief Willard's alleged custom of allowing Sgt. Brennan or other subordinate officers to file criminal complaints without adequate supervision.  Those allegations, without more, fail to demonstrate that there was any affirmative link between that custom or practice and the alleged constitutional violations in this case, which could be characterized as leading inexorably to any actionable Fourth Amendment claim in this case.  And there are no allegations suggesting deliberate indifference on Chief Willard's part, as there are no allegations showing he was aware of a substantial risk that his subordinate officers would: employ excessive force in arrests, arrest individuals who are immune from such arrests in the context of an overdose, or lodge criminal complaints that would result in court-ordered pretrial detention unsupported by probable cause.  Accordingly, the district judge should dismiss Claim 3(a)(ii) to the extent the claim is based on a theory of supervisory liability under section 1983.

### B.    Failure to Train/Supervise (Claims 3(b)(i)-(ii))

Mr. Bijeol alleges that the City and Chief Willard are liable under § 1983 for failing to provide adequate supervision of or training to subordinate officers regarding the interplay and requirements of RSA § 318-B:2 (drug crimes) and § 318-B:28-b

(overdose immunity); and the statutes regarding justices of the peace notarizing documents (RSA § 455-A:3) and officers signing and filing criminal complaints (RSA § 592-A:7).

> The failure to train theory offers a way for plaintiffs to hold a municipality liable under 42 U.S.C. § 1983 for the acts of its employees. Typically, a plaintiff first identifies a constitutional violation (often related to police misconduct) and then attempts to show that the violation was the direct result of poor training or supervision of municipal employees, stemming from "deliberate indifference to the rights of persons with whom the [employees] come into contact."  To prevail, the plaintiff must show that the constitutional violation had a "direct causal link" to the deficiency in training.

Jones v. City of Bos., 752 F.3d 38, 59 (1st Cir. 2014) (citations omitted); see also Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir. 1985) ("we hold that the supervisor must demonstrate at least gross negligence amounting to deliberate indifference, and that this conduct must be causally linked to the subordinate's violation of plaintiff's civil rights").

Mr. Bijeol has alleged that officers were inadequately trained or supervised regarding the cited state laws.  Construed liberally, the complaint's allegations regarding the failure to train or supervise officers regarding RSA § 318-B:2 (controlled drug crimes) and RSA § 318-B:28-b (overdose immunity) suffice to state a failure-to-train/deliberate indifference claim under section 1983, relating to Mr. Bijeol's arrest and the filing of

a criminal complaint, which survives this court's preliminary review.  Accordingly, in the Order issued this date the court directs the City, under Monell, as well as Chief Willard to be served and to file a response to Claim 3(b)(i), relating to the lack of training or supervision relating to RSA §§ 318-B:2 and 318-B:28-b.

The remaining failure to train and supervise allegations fail to plead any facts showing a causal link between the supervisory deficiencies and any alleged unconstitutional conduct.  Moreover, the facts alleged do not give rise to viable claim of any supervisory defendant's deliberate indifference to a substantial risk of serious harm relating to alleged inadequate training or supervision regarding the statutory requirements for police officers signing and filing criminal complaints, in general, and/or justices of the peace notarizing documents.  Accordingly, Claim 3(b)(ii) should be dismissed for failure to state a claim.

VII.  <u>Civil Rights Conspiracy (Claims 4(a)-(b))</u>

Claims 4(a) and 4(b) summarize Mr. Bijeol's allegation of a conspiracy among the defendants to violate his Fourth and Fourteenth Amendment rights, for which he seeks damages under 42 U.S.C. §§ 1983 and 1985.  A civil rights conspiracy is "a

combination of two or more persons acting in concert to commit
an unlawful act, or to commit a lawful act by unlawful means,
the principal element of which is an agreement between the
parties to inflict a wrong against or injury upon another, and
an overt act that results in damages." Estate of Bennett v.
Wainwright, 548 F.3d 155, 178 (1st Cir. 2008). Although "pro se
complaints are to be read generously, allegations of conspiracy
must nevertheless be supported by material facts, not merely
conclusory statements." Slotnick v. Garfinkle, 632 F.2d 163,
165 (1st Cir. 1980) (per curiam) (citation omitted).

Stripped of conclusory statements and speculation about the
goal of the conspiracy (punishing overdose victims who need
medical care), the allegations in the complaint fail to state a
claim that the defendants agreed to violate Mr. Bijeol's civil
rights with respect to Officer Catano's alleged decision to
subject him excessive force and warrantless arrest, and the
officers' decision to file a criminal complaint charging him
with drug possession. The complaint does not allege any other
facts which, taken as true, would establish that there was a
conspiratorial agreement between defendants.

Furthermore, to state a claim of a civil rights conspiracy
claim under § 1985 a plaintiff must allege interference with a
federally protected right, and race discrimination or other

class-based discrimination.  Boyle v. Barnstable Police Dep't,
818 F. Supp. 2d 284, 318 (D. Mass. 2011).  There are no
allegations in the complaint that state a claim of race
discrimination or any other discrimination targeting a protected
class.  Accordingly, the district judge should dismiss the civil
rights conspiracy claims summarized here as Claims 4(a) and
4(b), for failure to state a claim upon which relief can be
granted.

VIII.  State Law Claims (Claims 5 and 6)

    A.  State Constitution and Statutes (Claims 5(a)-(b))

Mr. Bijeol asserts defendants are liable for damages for
violating unspecified provisions of the state constitution and
for violating certain state laws.  The state constitution and
the state statutes he cites, however, do not give rise to any
privately enforceable claim for damages in their breach, and the
New Hampshire Supreme Court ("NHSC") has not recognized any of
those statutes as providing an implied cause of action for
damages.  See Dionne v. Amatucci, No. 10-cv-230-PB, 2011 DNH
170, 2011 WL 4915550, at *7, 2011 U.S. Dist. LEXIS 120394, at
*20 (D.N.H. Oct. 17, 2011) (declining to recognize cause of
action for damages for violation of state constitution relating
to officer's use of excessive force incident to arrest, as NHSC

has not recognized that claim, and "[l}itigants who choose a federal forum . . . cannot expect a federal court to push the boundaries of state law"); <u>see also</u> <u>Kinney v. Town of Pepperell</u>, Civ. No. 00-87-JD, 2000 DNH 229, 2000 WL 1745167, at *3, 2000 U.S. Dist. LEXIS 16306, at *7 (D.N.H. Oct. 26, 2000) ("The New Hampshire Constitution does not provide remedies for violations, and [plaintiff, who alleged violations of articles 15, 19, and 22 of state constitution] has not shown that the New Hampshire Supreme Court has established remedies for the violations he alleges."). Accordingly, Claims 5(a)-(b) should be dismissed for failure to state a claim upon which relief can be granted.

### B.    Tort of False Arrest (Claims 5(c)(i))

Mr. Bijeol alleges that the facts giving rise to a false arrest claim under the Fourth Amendment with respect to Officer Catano also provide grounds for finding her liable under state law for the intentional tort of false arrest.

> To prevail on a claim for false imprisonment, a plaintiff must demonstrate that: (1) the defendant acted with the intent of confining him within boundaries fixed by the defendant; (2) the defendant's act directly or indirectly resulted in the plaintiff's confinement; (3) the plaintiff was conscious of or harmed by the confinement; and (4) the defendant acted without legal authority.

<u>Ojo v. Lorenzo</u>, 164 N.H. 717, 726, 64 A.3d 974, 982 (2013)

(citations omitted).  "[P]robable cause is a defense to a claim for false imprisonment resulting from a warrantless detention." Id.

The facts alleged in the Complaint state a false arrest tort claim upon which relief can be granted against Officer Catano, with respect to her warrantless arrest of Mr. Bijeol before she learned he was a parolee subject to a 72-hour hold. Accordingly, in the Order issued this date, the court has served Claim 5(c)(i)(A) upon Officer Catano.

To the extent plaintiff seeks to assert the same state law false arrest claim against defendants after the 72-hour hold was lodged against Mr. Bijeol, plaintiff has failed to state a viable claim.  See RSA § 594:13 ("If a lawful cause of arrest exists, the arrest will be lawful even though the officer charged the wrong offense or gave a reason that did not justify the arrest.").  Accordingly, the district judge should dismiss that aspect of the false arrest claim (Claim 5(c)(i)(B)).


C.   Tort of Violation of Statute (Claim 5(c)(ii))

The complaint asserts a tort claim that Mr. Bijeol has labeled "violation of statute."  Mr. Bijeol claims that Officer Catano's and Sgt. Brennan's violations of state laws, specifically, Sgt. Brennan's alleged failure to sign under oath

and properly notarize the criminal complaint, and Officer

Catano's arrest of Mr. Bijeol on a charge of drug possession

notwithstanding the existence of the overdose immunity statute,

provides grounds for finding them liable in tort.

> The violation of a statutory standard of conduct can
> constitute negligence and may give rise to liability
> in tort.  A claim of negligence may be founded on a
> failure to satisfy such a standard of conduct "when
> the consequences contemplated by the statute have
> actually resulted from the violation."

Nichols v. Estabrook, 741 F. Supp. 325, 329 (D.N.H. 1989)

(citations omitted).

The common law in New Hampshire does not appear to provide

a cause of action for damages for negligent arrests and

prosecutions.  Nor is there authority for the proposition that a

police officer can be sued for negligence for failing to

properly notarize or sign a criminal complaint before filing it.

Assuming, without deciding, that such negligence claims could be

deemed actionable in New Hampshire, in the Order issued this

date, the court directs service of Claim 5(c)(ii) upon Officer

Catano; upon Sgt. Brennan, who signed the criminal complaint

individually and in a representational capacity; and upon the

City under a theory of vicarious liability.  That Order is

issued without prejudice to defendants' ability to move to

dismiss Claim 5(c)(ii) on any basis, including Fed. R. Civ. P.

12(b)(6), or to seek pretrial disposition of that claim based on defendants' common law official or vicarious immunity, see Farrelly v. City of Concord, 168 N.H. 430, 447, 130 A.3d 548, 561 (2015) (although officers "may have acted negligently in arresting the plaintiff without a warrant and in charging him under an unconstitutional subsection of the harassment statute," summary judgment was appropriate where "the record demonstrates as a matter of law that their actions did not rise to the level of reckless or wanton conduct sufficient to strip them" of official immunity for their acts).

### D.   Tort of Malicious Prosecution (Claim 5(c)(iii))

"The four elements of a claim for malicious prosecution [under state law] are: (1) the plaintiff was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor."  Id., 168 N.H. at 445, 130 A.3d at 560.  At the time when Officer Catano's arrest of Mr. Bijeol led to the filing of a criminal complaint, there was probable cause to order Mr. Bijeol detained because of the 72-hour hold.  Furthermore, with respect to Sgt. Brennan and Chief Willard, Mr. Bijeol's state law malicious prosecution claim should be dismissed as the complaint lacks any non-

speculative, non-conclusory allegations of malice with respect
to those officers.  Accordingly, the claim seeking damages for
the tort of malicious prosecution (Claim 5(c)(iii)) should be
dismissed.

### E.    Emotional Distress (Claim 5(c)(iv))

To state a claim of intentional infliction of emotional
distress, a plaintiff must allege facts showing that the
defendants' extreme and outrageous conduct has caused the
plaintiff severe emotional distress.  Tessier v. Rockefeller,
162 N.H. 324, 341, 33 A.3d 1118, 1133 (2011); Konefal v.
Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 260, 723 A.2d
30, 33 (1998).  Such factual allegations are lacking with
respect to the alleged deficiencies in the signing of the
criminal complaint and/or the alleged absence of probable cause
relating to Mr. Bijeol's warrantless arrest and prosecution.
Accordingly, Mr. Bijeol's claim of intentional infliction of
emotional distress (Claim 5(c)(iv)) should be dismissed.

### F.    Deceit/Fraud (Claim 5(c)(v))

Mr. Bijeol asserts that unspecified representations in the
criminal complaint provide grounds for finding Sgt. Brennan
liable for the tort of "deceit."  Construed liberally, Mr.

Bijeol appears to take issue with Sgt. Brennan's signature on
that complaint on Chief Willard's behalf, and upon the
procedural deficiencies in the JP's signature on the criminal
complaint, where, he argues, it is not clear that either officer
personally appeared before a JP, swearing to the truth of the
matters alleged.

> In order to prove deceit, the plaintiff must prove
> that the defendant intentionally made material false
> statements to the plaintiff, which the defendant knew
> to be false or which he had no knowledge or belief
> were true, for the purpose of causing, and which does
> cause, the plaintiff reasonably to rely to his
> detriment.

Caledonia, Inc. v. Trainor, 123 N.H. 116, 124, 459 A.2d 613,
617-18 (1983).  The Complaint lacks any allegations suggesting
any detrimental reliance by plaintiff on any false statements
knowingly made by any defendant, upon which an actionable fraud
or deceit claim could be based.  Accordingly, the district judge
should dismiss plaintiff's tort claim of deceit (Claim 5(c)(v))
for failure to state a claim upon which relief can be granted.


   G.   Tortious Failure to Train/Supervise (Claim 6(a)-(b))

   Mr. Bijeol bases a claim of tort liability upon allegations
that MPD officers received inadequate training and supervision
regarding arrests and prosecutions for drug possession, in
violation of RSA § 318-B:2, in circumstances where RSA § 318-

B:28-b may provide immunity.  Mr. Bijeol specifically alleges

that Capt. Begley, Sgt. Biron, Sgt. Brennan, and Chief Willard

were responsible for training or supervising their subordinate

officers regarding those matters.

> The basis for a claim of negligent employment or
> supervision brought against an employer where the
> employee harms a third party is not the vicarious
> liability of the doctrine of respondeat superior, but
> a separate theory of employer liability. . . .
> "Liability exists only if all the requirements of an
> action of tort for negligence exist."

Tessier, 162 N.H. at 342, 33 A.3d at 1133 (citations omitted).

Construed liberally, the complaint's allegations regarding

the failure to train officers regarding RSA § 318-B:2

(controlled drug crimes) and RSA § 318-B:28-b (overdose

immunity) suffice to state a failure-to-train negligence claim,

which survives this court's preliminary review.  Accordingly, in

the Order issued this date the court directs defendants Capt.

Michael Begley, Sgt. Michael Biron, Sgt. Brennan, and Chief

Willard to be served and to file a response to Claim 6(a),

relating to the lack of training or supervision as to RSA

§§ 318-B:2 and 318-B:28-b.

The remaining failure to train and supervise allegations,

stripped of legal conclusions, fail to plead sufficient facts

showing that the alleged deficiencies were causally related to,

or the proximate cause of, any injury suffered by Mr. Bijeol.

Accordingly, Claim 6(b) should be dismissed for failure to state a claim.

### H.   Vicarious Liability (Claim 6(c))

In Claim 6(c), Mr. Bijeol claims that the City is vicariously liable for the MPD officers' alleged tortious conduct.  The Complaint states a claim of the City's vicarious liability for Mr. Bijeol's alleged tortious arrest of Mr. Bijeol for drug possession, and for the supervisory defendants' negligent failure to train or supervise Officer Catano with respect to RSA §§ 318-B:2 and 318-B:28-b.  Accordingly, the City is required to answer Claim 6(c), with respect to those issues, pursuant to the terms of the Order issued this date.

### IX.  Request for Criminal Prosecution and Injunctive Relief

Mr. Bijeol asks the court to initiate a criminal prosecution of defendants and seeks injunctive relief regarding the MPD's practices relating to arrests and the filing of criminal complaints.  "Private citizens lack a judicially cognizable interest in the prosecution or nonprosecution of another."  In re Compact Disc Minimum Advert'd Price Antitr. Litig., 456 F. Supp. 2d 131, 145 (D. Me. 2006) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973))

(internal quotation marks and alterations omitted).

Accordingly, the district judge should deny Mr. Bijeol's request

that this court initiate criminal proceedings against any

defendant.

Moreover, the district judge should dismiss Mr. Bijeol's

claims for injunctive relief for lack of standing, as he cannot

demonstrate that he faces any realistic threat that he would be

subjected to the same law enforcement policies and practices he

challenges in this lawsuit.  See City of L.A. v. Lyons, 461 U.S.

95, 109 (1983) (plaintiff who had been subjected to police

chokehold in past lacked standing to seek injunction against

enforcement of police chokehold policy in future because he

could not credibly allege that he faced realistic threat from

policy).

## Conclusion

For the foregoing reasons the district judge should:

1.    Deny Mr. Bijeol's requests that the court
initiate criminal prosecutions against defendants, for lack
of standing;

2.    Dismiss Mr. Bijeol's claims to the extent he
seeks any injunctive relief, for lack of standing; and

3.    Dismiss Claims 1(b), 2(a)(ii), 2(a)(iii),
2(b)(i), 2(c), 2(d), 3(a)(i), 3(a)(ii), 3(b)(ii), 4(a),
4(b), 5(a), 5(b), 5(c)(i)(B), 5(c)(iii), 5(c)(iv), 5(c)(v),
and 6(b).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  That period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

June 8, 2020

cc:  Jonathan Bijeol, pro se